UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MAURY PHILLIPS,                                       :
                                                      :
                              Plaintiff,              :
                                                      :
            -against-                                 :          REPORT AND
                                                      :          RECOMMENDATION
TRAXNYC CORP.,                                         :
                                                      :          21-CV-528 (LDH)(MMH)
                              Defendant.              :
                                                      :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Maury Lee Phillips ("Plaintiff" or "Phillips") brings this copyright

infringement action against Defendant TraxNYC Corp. ("Defendant" or "TraxNYC") pursuant

to the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Digital Millennium Copyright Act

("DMCA"), 17 U.S.C. § 1201 *et seq.* Plaintiff alleges that Defendant unlawfully infringed on

his copyright by publishing an uncredited photograph of the deceased rapper Christopher

Wallace, also known as The Notorious B.I.G., on its website without permission.  (*See*

*generally* Compl., ECF No. 1.)[1]

Before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of

Civil Procedure ("Rule") 55(b) and Local Civil Rule 55.2.  (*See generally* Pl.'s Mot., ECF No.

23.)[2]    The Honorable LaShann DeArcy Hall referred the motion for report and

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.

[2] "Pl.'s Mot." refers to Plaintiff's "Request for Entry of Default Judgment for Sum Certain" (ECF
No. 23) and its supporting exhibits: (1) Plaintiff's memorandum of law in support of the Motion
("Pl.'s Mem.") (ECF No. 23-1); (2) Declaration of Maury Lee Phillips ("Phillips Decl.") and a
supporting exhibit (ECF No. 24); (3) Declaration of David C. Deal, counsel for Plaintiff ("Deal

recommendation. For the reasons set forth below, the Court respectfully recommends that the motion should be **granted** as follows: (1) a default judgment should be entered against Defendant and (2) Plaintiff should be awarded damages in the total sum of $38,252, which includes: (a) $10,000 in actual damages pursuant to the Copyright Act; (b) $25,000 in statutory damages under the DMCA; (c) $2,700 in attorneys' fees; and (d) $552 in costs.

# I.  BACKGROUND

### A.  Factual Allegations

The Court relies on the Complaint and Plaintiff's submissions on the motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015) (explaining that courts may "enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true" and that a plaintiff "is entitled to all reasonable inferences").

Plaintiff is a commercial photographer residing in Los Angeles, California who specializes in images of individuals in the entertainment industry.  (Compl., ECF No. 1 ¶ 1.) Defendant is a domestic business corporation existing under the laws of the State of New York, with headquarters in Rego Park, New York and a storefront located at 64 West 47th Street, New York, New York 10036 (the "TraxNYC Address").  (Compl., ECF No. 1 ¶ 2.) Defendant

---

Decl.") (ECF No. 23-3); (4) a proposed order (ECF No. 23-4); and (5) a certificate of service of the motion papers (ECF No. 23-5).  As discussed in more detail below, Plaintiff also filed a supplemental letter brief dated December 30, 2022 ("Supp. Mem.") (ECF No. 25) and supporting exhibits: (1) pre- and post-lawsuit communications between Plaintiff's counsel and TraxNYC (ECF No. 25-1); (2) the Complaint and Certificate of Default (ECF No. 25-2); (3) attorney billing records and receipts (ECF No. 25-3); and (4) a certificate of service of the supplemental materials (ECF No. 25-4).

owns, operates, and is solely responsible for the content on its commercial website, www.traxnyc.com (the "TraxNYC Website").  (*Id.*)

On March 9, 1997, Plaintiff captured a photograph entitled "Notorious BIG-Maury Phillips Archives_3.jpg" which depicts Wallace, Sean Combs (then known as Puff Daddy), and others in Los Angeles (the "Photograph").  (*Id.* ¶ 8; Compl. Ex. 1, ECF No. 1-1 at 2.)  The Photograph was taken the same night that Wallace was killed. (Compl. Ex. 2, ECF No. 1-2 at 2.)  Plaintiff posted the photograph on his website www.mauryphillipsphotos.photoshelter.com (the "Phillips Website") with the watermark "Maury L. Phillips Photography ©"[3] on March 10, 1997.  (*Id.* at 2; *see also* Compl., ECF No. 1 ¶¶ 9–10.)  On September 30, 2012, Plaintiff registered the photo with the United States Copyright Office with registration number VA-1-842-287.   (Compl., ECF No. 1 ¶ 13; Certificate of Registration ("Certificate"), Compl. Ex. 4, ECF No. 1-4 at 2.)

Beginning on approximately September 1, 2012, Defendant posted a cropped version of the Photograph on the TraxNYC Website to advertise jewelry commemorating Combs and Wallace's close relationship.  (Compl. Ex. 3, ECF No. 1-3 at 2; *see also* Compl., ECF No. 1 ¶¶ 11–12, 14.)[4]  The cropped version depicted only Wallace and Combs and did not include

---

[3] The Complaint describes the watermark as "Maury L. Phillips Photograhy [*sic*] ©."  (Compl., ECF No. 1 ¶ 10.)  However, copies of the Photograph attached as exhibits to the Complaint include the watermark "Maury L. Phillips Photogra**p**hy ©."  (Photograph, Compl. Ex. 1, ECF No. 1-1 at 2; Compl. Ex. 2, ECF No. 1-2 at 2 (emphasis added).)

[4] The screenshot of the TraxNYC Website attached as an exhibit to the Complaint was last visited on January 21, 2021.  (Compl., ECF No. 1 ¶ 12.)   As of the date of this Report and Recommendation, the Photograph is no longer on the TraxNYC Website.

Plaintiff's watermark.  (Compl. Ex. 3, ECF No. 1-3 at 2.)  TraxNYC did not have Plaintiff's permission or a license to use the Photograph.  (Compl., ECF No. 1 ¶ 15.)

On May 18, 2020, Plaintiff's counsel emailed a cease-and-desist letter addressed to Maksud Agadjani, the CEO of TraxNYC, at the TraxNYC Address and to the email address service@traxnyc.com.  (May 18, 2020 Ltr., Compl. Ex. 5, ECF No. 1-5.)  Counsel warned Agadjani that TraxNYC's use of the Photograph infringed on Plaintiff's copyright, and further requested that TraxNYC remove the Photograph from its website and pay $10,000 to compensate Plaintiff for the infringement.  (*Id.* at 2–3; *see* Compl., ECF No. 1 ¶ 16.)  After Defendant failed to remove the Photograph from its website, counsel for Plaintiff also exchanged emails and text messages with TraxNYC employees and counsel regarding the alleged infringement.  (Supp. Mem. Ex. 1, ECF No. 25-1 at 7–44.)  Defendant refused to remove the Photograph from its website despite multiple requests from Plaintiff.  (Compl., ECF No. 1 ¶ 16.)[5]

### B. Procedural History

Plaintiff commenced this action on February 1, 2021, asserting one count of copyright infringement, in violation of the Copyright Act, and one count of intentional removal of copyright management information, in violation of the DMCA.  (Compl., ECF No. 1.)  On April 6, 2021, Plaintiff served the summons and complaint at the TraxNYC Address, where an individual identified as Dan "Smith" (who refused to identify his true last name) signed for receipt.  (Pl.'s Aff. of Service, ECF No. 9.)  After TraxNYC failed to answer or otherwise

---

[5] Defendant removed the photograph as of December 9, 2021.  (Dec. 9, 2021 Hearing Transcript ("Tr."), ECF No. 15 at 18:13–19:1.)

appear in this action, the Clerk of Court entered a certificate of default against it.  (Entry of Default, Supp. Mem. Ex. 2, ECF No. 25-2 at 22.)

Plaintiff moved for entry for default judgment, seeking actual damages pursuant to the Copyright Act, statutory damages under the DMCA, and a permanent injunction against Defendant committing any further infringement.  (*See generally* ECF No. 12.)  Judge DeArcy Hall referred the motion for a report and recommendation.  (July 22, 2021 Order Referring Mot.)  On October 15, 2021, the Court scheduled a hearing and issued a notice to Defendant to appear.  (Oct. 15, 2021 Order, ECF No. 13.)  Pursuant to the Court's Order, Plaintiff filed proof of service on Defendant at the TraxNYC Address.  (Pl.'s Aff. of Service, ECF No. 14.)

At the hearing on December 9, 2021, Plaintiff and his counsel appeared; neither Defendant nor defense counsel appeared.  (Dec. 9. 2021 Minute Entry & Order.)  In response to the Court's request, Plaintiff filed supplemental materials and briefing on January 11, 2022.  (Supp. Mem., ECF No. 16.)  Subsequently, Plaintiff withdrew his motion for default judgment after the Court questioned whether Plaintiff had properly effected service of the Complaint.  (Feb. 25, 2022 Minute Entry & Order; ECF No. 19.)

Plaintiff served the summons and Complaint again on TraxNYC on May 9, 2022, this time by service on the New York Secretary of State.  (Pl.'s Aff. of Service, ECF No. 20.)  After TraxNYC failed to answer or otherwise appear for the second time in this action, the Clerk of Court entered another certificate of default.  (Entry of Default, ECF No. 22.)  Plaintiff filed the instant motion for default judgment on July 13, 2022, seeking the same relief as in the first motion.  (*See generally* Pl.'s Mot., ECF No. 23.)  Judge DeArcy Hall referred the second motion for a report and recommendation.  (July 22, 2022 Order Referring Mot.)  In response

to the Court's request, Plaintiff filed supplemental materials and briefing on December 30, 2022, adding a request for attorneys' fees.  (Supp. Mem., ECF No. 25.)

To date, Defendant still has not appeared in the case or responded to Plaintiff's motion.

## II. STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process to obtain a default judgment.  Fed. R. Civ. P. 55(a)-(b); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021); *Priestly v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011).  First, when a party submits an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the Clerk of Court shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation" the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up); *Div. 1181 Amalgamated Transit Union—New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).  "It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted."  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997).  The Court must draw all reasonable inferences in favor of the

movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up). "In determining whether to issue a default judgment, the Court has the 'responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.'" *J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461 (PKC)(CLP), 2015 WL 8483362, at *2 (E.D.N.Y. Dec. 9, 2015) (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010)).

## III.  JURISDICTION AND VENUE

### A.  Subject Matter Jurisdiction

Pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Court has original jurisdiction over Plaintiff's claims pursuant to the Copyright Act, 17 U.S.C. §§ 106 and 501(b), and the DMCA, 17 U.S.C. §§ 1202 and 1203.

### B.  Service of Process

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG)(RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (cleaned up); *see Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order) ("Among other things, the moving party must demonstrate that entry of

default is appropriate, which requires a showing that the nonappearing party was effectively served with process." (citing 10A Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2682 (4th ed. 2008))). Plaintiff properly served Defendant by delivering copies of the summons and Complaint with the New York Secretary of State. Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. Bus. Corp. L. § 306(b)(1).

### C.  Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(a)(1). A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." 28 U.S.C. § 1391(d). Here, TraxNYC is subject to personal jurisdiction in New York state because its storefront is located in New York, New York and its headquarters are located in Rego Park, New York. (Compl., ECF No. 1 ¶ 2.) Therefore, venue is proper in this district. *See* 28 U.S.C. § 1391(d); *see also* 28 U.S.C. § 1391(a)(1).

## IV.   DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB),

2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful.  *United States v. Ireland*, No. 15-CV-3397 (JS)(AYS), 2016 WL 5376248, at *4 (E.D.N.Y. Aug. 8, 2016), *adopted by* 2016 WL 5372801 (E.D.N.Y. Sept. 26, 2016); *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful.").  As noted above, Plaintiff properly served the summons and Complaint by delivery to the Secretary of State. (ECF No. 20.)  Despite being properly served, Defendant failed to answer the Complaint or otherwise appear in the action.  Defendant was also repeatedly notified of two pending motions for default judgment and failed to respond to Plaintiff or to the Court.  (ECF Nos. 12–14, 23–25; Dec. 9, 2021 Minute Entry and Order.)  Defendant's conduct therefore demonstrates willfulness.[6]

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those

---

[6] The Court finds willfulness even though employees of Defendant exchanged emails with Plaintiff's counsel before and after the lawsuit began.  (Supp. Mem. Ex. 1, ECF No. 25-1 at 7–44.) Since the Motion was filed, Defendant has not contacted Plaintiff or his counsel, has not responded to the Motion, and has not appeared in the case.  Further, the email exchanges presented to the Court cannot be considered a "response" to pleadings.  *See* Fed. R. Civ. P. 8(b) (requirements for asserting defenses); Fed. R. Civ. P. 10 (form of pleadings); *Root Bros. Farms v. Big Produce, Inc.*, No. 21-CV-1962 (EK)(MMH), 2022 WL 4586185, at *4 n.6 (E.D.N.Y. Aug. 2, 2022) *adopted by* 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022) (granting default judgment and finding willfulness when defendant emailed with plaintiff's counsel prior to entry of default judgment, but did not formally answer or otherwise attempt to appear before the Court).

circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). As noted, Defendant has failed to answer or provide any defense to Plaintiff's claims. Accordingly, a default is warranted.

Third, Plaintiff will be prejudiced if the motion for default judgment is denied because he has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, "[w]ithout the entry of a default judgment, Plaintiff[] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (first alteration in original) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)). Based on the foregoing, entry of default judgment is permissible. The Court now turns to the issue of liability.

## V.   LIABILITY

### A.  Copyright Infringement (Count I)

"Anyone who violates any of the exclusive rights of [a] copyright owner . . . is an infringer of the copyright or right of the author[.]" 17 U.S.C. § 501(a). The copyright owner's "exclusive rights" include "any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [or] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Id.* § 106; *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 44 (2d Cir. 2018). For a copyright holder to establish infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2)

copying of constituent elements of the work that are original." *Haker v. Tentree Int'l Inc.*, No. 20-CV-1499 (KAM)(RML), 2021 WL 3884195, at *3 (E.D.N.Y. Aug. 31, 2021) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

### 1. *Ownership of a Valid Copyright*

As to the first element, Plaintiff establishes his ownership of a valid copyright. The Complaint alleges that Plaintiff captured the Photograph, is "the copyright owner or licensee of exclusive rights" over the Photograph, and possesses the rights "to reproduce and distribute" the Photograph. (Compl., ECF No. 1 ¶¶ 8, 18–19.) Plaintiff also attaches a copy of the Photograph as published on the Phillips Website. (Compl. Ex. 1, ECF No. 1-1 at 2.) In the context of a default judgment, where the well-pleaded allegations in the complaint are accepted as true, no further proof of ownership is required. *See Fleishman v. World Bride Magazine, LLC*, No. 19-CV-5595 (EK)(LB), 2020 WL 7774843, at *2 (E.D.N.Y. Oct. 27, 2020) (granting motion for default judgment where "[t]he complaint alleges that plaintiff is the author of the Photograph, its sole copyright owner, and the Photograph was registered with the Copyright Office.")

Plaintiff also attaches the Certificate dated September 30, 2012, listing himself as the author of the Photograph, as proof of the copyright's validity. (Compl. Ex. 4, ECF No. 1-4.) A certificate of registration within five years after first publication of a copyrighted work is *prima facie* evidence of the validity of the copyright, but "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). While the Certificate is dated nearly 15 years after Plaintiff published the Photograph in 1997, it is sufficient proof of ownership because "registration is not a condition of copyright

protection." 17 U.S.C. § 408(a); see *also Fleishman*, 2020 WL 7774843, at *3 n.9 ("For the purposes of liability, the timing of registration and publication are immaterial because '[u]pon registration of the copyright, . . . a copyright owner can recover for infringement that occurred both before and after registration.'") (quoting *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019)); *Sohm v. Scholastic Inc*., 959 F.3d 39, 52–53 (2d Cir. 2020). Further, "because Defendants have failed to offer evidence showing that the certificate of registration is invalid, Plaintiff sufficiently established his valid ownership of the copyright." *Simhaq v. Kid Carter Touring, Inc.*, No. 20-CV-2057 (RPK)(RER), 2021 WL 3810754, at *3 (E.D.N.Y. Aug. 11, 2021), *adopted by* 2021 WL 3793876 (E.D.N.Y. Aug. 26, 2021).

## 2.     *Copying of Constituent Elements*

"To establish the second element of a copyright infringement claim, the '[p]laintiff must meet a 'minimal' burden to show that the Photograph is his [or her] original work and allege a violation of his [or her] exclusive rights under § 106.'" *Parsons v Bong Mines Ent. LLC,* No. 19-CV-0813 (JMA)(AKT), 2021 WL 931506, at *6 (E.D.N.Y. Feb. 18, 2021) (alterations in original), adopted *by* 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021) (quoting *Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688 (PKC)(VMS), 2020 WL 207352, at *4 (E.D.N.Y. Jan. 14, 2020)). "In the context of copyright cases, original 'means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" *Bittichesu v. Lucia Lighting & Design, Inc.*, No. 2:20-CV-1612 (PKC)(RML), 2021 WL 3354298, at *3 (E.D.N.Y. June 28, 2021) (quoting *Feist Publ'ns*, 499 U.S. at 345). "For photographs, originality may be founded upon . . . [their] subject matter, angle of photograph, lighting, determination of the precise time

when the photograph is to be taken, the kind of camera, the kind of film, the kind of lens, and the area in which the pictures are taken." *Bittichesu*, 2021 WL 3354298, at *3 (alteration in original) (quoting *Pasatieri*, 2020 WL 207352, at *2).

Plaintiff sufficiently pleads the originality of his work and a violation of his exclusive rights as copyright owner. Plaintiff claims that he "captured the [P]hotograph . . . on March 9, 1997" in Los Angeles and posted it to his website the next day. (Compl., ECF No. 1 ¶¶ 8-9.) Plaintiff alleges that Defendant published the Photograph on the TraxNYC Website without Plaintiff's permission or license and despite Plaintiff's written demands to remove the Photograph. (*Id.* ¶¶ 12, 15–16, 20; *see also* Compl. Ex. 5, ECF No. 1-5; Supp. Mem. Ex. 1, ECF No. 25-1.) Plaintiff also attaches copies of the Photograph as published on his website in March 1997 and as published on the TraxNYC website in approximately September 2012. (Compl. Ex. 5B, ECF No. 1-5.) The two versions of the Photograph are virtually identical in depicting Wallace and Combs from the same angle and with the same clothing, styling, lighting, and background. (*Compare* Compl. Ex. 1, ECF No. 1-1 at 2, *with* Compl. Ex. 2, ECF No. 1-2 at 2.) The caption of the Photograph published in March 1997 highlights its unique characteristics—for example, that the Photograph was captured on the same night as Wallace's death. (Compl. Ex. 2, ECF No. 1-2 at 2.) These facts are sufficient to establish the second

element of a copyright infringement claim. *Parsons*, 2021 WL 931506, at *6 (collecting cases).

Based on the foregoing, the Court respectfully recommends a default judgment should be entered against Defendant for copyright infringement under the Copyright Act.

### B. Removal and Alteration of Copyright Management Information (Count II)

Under the DMCA, "[n]o person shall, without the authority of the copyright owner or the law . . . intentionally remove or alter any copyright management information." 17 U.S.C. § 1202(b)(1). "Copyright management information" ("CMI") includes, but is not limited to, "the name of, and other identifying information about, the author of a work" and "the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(2)–(3).[7] To establish a violation, Plaintiff must demonstrate: (1) "the existence of CMI [on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Hirsch v. F. Daily Inc.*, No. 18-CV-6531 (LDH)(SJB), 2021 WL 1158562, at *5 (E.D.N.Y. Feb. 9, 2021) (cleaned up), *adopted by* 2021 WL 1163153 (E.D.N.Y. Mar. 26, 2021).

Plaintiff pleads sufficient facts to establish a violation of the DMCA. *First*, Plaintiff alleges that he posted the photograph on the Phillips Website with the watermark "Maury L. Phillips Photography ©" on March 10, 1997, and attaches the Photograph with the CMI.

---

[7] A CMI does not need to have all of the elements of a copyright, but requires some subset of: (1) the symbol "©," the word "Copyright," or the abbreviation "Copr."; (2) the year of the publication of the work; or (3) the name of the owner of the copyright. *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 138 (E.D.N.Y. 2019).

(Photograph, Compl. Ex. 1, ECF No. 1-2; Phillips Website, Compl. Ex. 2, ECF 1-2 at 2; *see also* Compl., ECF No. 1 ¶¶ 9–10.)

*Second*, Plaintiff states that TraxNYC intentionally removed the CMI and posted the Photograph (also attached to the Complaint) on the TraxNYC Website without Plaintiff's permission or consent. (Compl. Ex. 3, ECF No. 1-3; *see also* Compl., ECF No. 1 ¶¶ 12, 14, 23.) The version of the Photograph on Defendant's website is cropped to show only Wallace and Combs and does not include the CMI. (Compl. Ex. 3, ECF 1-3.)

*Third*, Plaintiff alleges that the Defendant used the Photograph to advertise an item of jewelry, which supports a finding that the removal of the CMI was intentional. *See generally Sheldon v. Plot Commerce*, No. 15-CV-5885 (CBA)(CLP), 2016 WL 5107072, at *12–13, 16–17 (E.D.N.Y. Aug. 26, 2016) (finding commercial defendant liable for intentional DMCA violation when removing plaintiff's CMI from a photograph to sell tickets on defendant's website). The Court therefore recommends that Defendant be held liable for a violation of the DMCA.

## VI.   DAMAGES

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Marketing, Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (cleaned up). Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri*, 2020 WL 5913190, at *2 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Here, Plaintiff requests actual damages of $10,000 for

copyright infringement pursuant to the Copyright Act, statutory damages of $25,000 for violations of the DMCA, and attorneys' fees and costs.  (Pl.'s Mem, ECF No. 23-1 at 7–12; Supp. Mem., ECF No. 25.)[8]

## A. Actual Damages for Copyright Infringement

Under the Copyright Act, an infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." 17 U.S.C. § 504(a).[9]  "The award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act."  *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001), *as amended* (May 15, 2001).  However, a plaintiff's recovery for copyright

---

[8] In the Complaint, Plaintiff also requested: (1) a permanent injunction enjoining Defendant from copying or republishing the Photograph without consent and (2) an accounting of all of Defendant's profits from its infringement.  (Compl., ECF No. 1 ¶¶ 22, 24; *see also id.* at 5 ("Prayer for Relief").)  Plaintiff has withdrawn his request for injunctive relief because Defendant removed the Photograph from the TraxNYC Website at some point after notice from Plaintiff's counsel. (Supp. Mem., ECF No. 25 at 1.)  The Court therefore recommends deleting the award of injunctive relief in paragraph 3(a) of the proposed Final Default Judgment.  (Pl.'s Mot. Ex. 4, ECF No. 23-4 at 1–2.)  Further, despite submitting supplemental materials, Plaintiff does not repeat his request for an accounting and does not offer any records or argument to support such relief. Accordingly, the request for an accounting is deemed waived.  *See Root Bros. Farms*, 2022 WL 4586185, at *8 (Plaintiff waived claims raised in complaint but omitted from default judgment motion).

[9] Plaintiff is not eligible for statutory damages under the Copyright Act because "[a] copyright holder may not elect statutory damages or receive attorney's fees if 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.'" *Olusola v. Don Coqui Holding Co., LLC*, No. 19-CV-6909 (MKB)(JO), 2020 WL 8771246, at *3, *adopted in relevant part by* 2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) (citing 17 U.S.C. § 412). Here, Plaintiff did not register the Photograph until September 30, 2012, more than 15 years after first publication on March 10, 1997, and one month after the alleged infringement date of September 1, 2012.  (Compl., ECF No. 1 ¶¶ 3–4; Compl. Ex. 4, ECF No. 1-4.)

infringement is limited to damages incurred during the three years before filing suit.  *Sohm*, 959 F.3d at 52.

To determine actual damages under the Copyright Act, courts in this circuit "rely upon 'the market value of the [licensing] fee the owner was entitled to charge for such use.'" *Pasatieri*, 2020 WL 207352, at *4 (citing *On Davis*, 246 F.3d at 165).  A plaintiff bears the burden of providing evidence of lost licensing fees.  *See Mango v. Northside Media Grp., LLC*, No. 18-CV-5504 (ENV)(JO), 2019 WL 4261743, at *1 (E.D.N.Y. Sept. 9, 2019) (denying actual damages for an infringed photograph where Plaintiff failed to produce prior licensing agreements); *see also Sheldon*, 2016 WL 5107072 at *15 (similar licenses secured by plaintiff could be used to determine damages, but plaintiff was required to explain any increase in requested licensing fees).  Plaintiff's request must be "*reasonable* according to typical market values."  *Bittichesu*, 2021 WL 3354298, at *3  (emphasis in original) (cleaned up).

Plaintiff states that as a professional photographer with 25 years of experience, he "command[s] high license fees" because of his "willingness to travel to capture photographs" and "the quality" of his work.  (Phillips Decl. ¶¶ 3–4.)  He also says that his work, including the Photograph, is sought by multiple "advertising, editorial, and other commercial entities." (*Id.* ¶ 4.)  As an example, Plaintiff attaches a signed license agreement from May 2017 ("the Agreement"), in which he charged $5,000 each for the use of two photographs of Wallace in a television documentary for ten years from the original airdate.  (Phillips Decl. ¶ 4 & Ex. 1.). Plaintiff avers that the Photograph is one of the two photographs subject to the Agreement. (Phillips Decl. ¶ 4.)

The Court finds that, "look[ing] at the facts from the point of view of the[] copyright owner," actual damages of $10,000 are warranted.  *On Davis*, 246 F.3d at 159.  Plaintiff

licensed the Photograph for $5,000 based on, *inter alia*, his skills and experience, its subject matter (Wallace and Combs), and its historical significance (the photo was taken on the night Wallace died). Indeed, TraxNYC implicitly acknowledges the Photograph's unique qualities on the TraxNYC website, noting in the Photograph's caption that Combs and Wallace "were pioneers of hip hop jewelry," that "[o]n March 9th, 1997 [Wallace]'s life was tragically cut short," that "15 years after his passing, his music lives on," and that its custom jewelry design for Combs "commemorate[s] the special relationship the two of them shared." (Compl. Ex. 3, ECF No. 1-3 at 2.) Those variables would have been unchanged had Defendant sought Plaintiff's permission to license the Photograph, and Plaintiff reasonably could have charged at least $5,000. Moreover, Plaintiff's $5,000 license fee was for use of the Photograph in a televised documentary with a specific airdate. In contrast, Defendant would have requested use of the Photograph for ongoing publication on a commercial website not only to promote the Wallace-related pendant, but also to attract consumers to Defendant's other products and custom jewelry designs.[10] In this context, given the Photograph's anticipated widespread commercial use and Defendant's expected substantial return on its investment (i.e., increased jewelry sales), the higher fee reflects a reasonable market value for use of the Photograph.

For these reasons, the Court recommends that Plaintiff should be awarded $10,000 in actual damages for Defendant's violation of the Copyright Act.

**B. Statutory Damages for Violation of the DMCA**

Under the DMCA, a plaintiff "may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

---

[10] Even considering the three-year limitations on damages, *see Sohm*, 959 F.3d at 52, the Photograph would have been posted on the TraxNYC website daily for the entire period.

17 U.S.C. § 1203(c)(3)(B). "Plaintiffs may recover damages under the Copyright Act and [the] DMCA because 'each statute protect[s] different interests.'" *Hirsch*, 2021 WL 1158562, at \*5 (quoting *Bass v. Diversity Inc. Media*, No. 19-CV-2261 (AJN), 2020 WL 2765093, at \*5 (S.D.N.Y. May 28, 2020)). "In awarding statutory damages under the DMCA, courts "consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at \*4 (S.D.N.Y. Nov. 14, 2018) (quoting *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at \*10 (S.D.N.Y. Aug. 13, 2014)).

Based on the record, the relevant factors support Plaintiff's requested statutory damages award of $25,000. *First*, as noted above, Defendant's default makes it difficult to prove the amount of actual damages Plaintiff suffered as a result of the DMCA violations.

*Second*, the circumstances of the violation support a significant statutory damages award. *See Sheldon*, 2016 WL 5107072 at \*17 (awarding maximum statutory damages of $25,000 per violation to deter defendant and others from knowing and willful commercial violations, avoidance of service, and "refusing to appear despite being served with Complaint and subsequent pleadings.") The version of the Photograph on Plaintiff's website includes the CMI in the center of the frame, directly beneath Wallace's and Combs's faces. In contrast, the version of the Photograph on the TraxNYC website crops the image to show only Wallace and Combs and conspicuously omits the CMI. Moreover, Defendant's website highlighted the individuals depicted in the Photograph to sell custom jewelry, yet Defendant deprived Plaintiff of his right to attribution and, arguably, made it easier for potential infringers to violate

Plaintiff's rights in the Photograph by removing Plaintiff's CMI." *Olusola*, 2021 WL 631031, at *5. This factor therefore supports a higher statutory damages award.

*Third*, the record supports a finding of willful infringement. *See Sheldon*, 2016 WL 5107072 at *17 ("When a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe.") (citing *SEB v. Montgomery Ward & Co.,* No. 99-CV-9284, 2008 WL 4540416, at *1 (S.D.N.Y. Oct. 1, 2008), *aff'd*, 594 F.3d 1360, 1366 (Fed. Cir. 2010), *aff'd sub nom. Global Tech Appliances Inc. v. SEB S.A.*, 563 U.S. 754 (2011)). Plaintiff's counsel's cease-and-desist letter and exhibits in May 2020 stated plainly that TraxNYC's use of the Photograph infringed on Plaintiff's copyright and further requested that TraxNYC remove the Photograph from its website. (Compl. Ex. 5, ECF No. 1-5 at 2–3; *see* Compl., ECF No. 1 ¶ 16.) Plaintiff alleges, and the Court accepts based on Defendant's default, that Defendant continued to display the Photograph on the TraxNYC website for nearly eight months after the cease-and-desist letter despite texts and emails from Plaintiff's counsel. (Compl., ECF No. 1 ¶¶ 12, 16; *see also* Compl. Ex. 3, ECF No. 1-3; Supp. Mem. Ex. 2, ECF 25-2 at 7–18.) All of these communications put Defendant on notice about its unlawful conduct, but it continued to display the Photograph. This evidence of willful removal of CMI supports a higher damages award. *See Sheldon*, 2016 WL 5107072 at *17 (willful violation of the DMCA where, despite notice and discussions of potential settlement, Defendant continued to display copyrighted photograph); *cf. Cuffaro v. Fashionisto LLC*, No. 19-CV-7265 (GBD)(KHP), 2020 WL 5077449, at *5 (S.D.N.Y. July 9, 2020) (awarding minimum statutory damages of $2,500 for DMCA violation where Plaintiff did not submit license fee information, did not specify any CMI removed from photograph, and did not notify Defendant about infringement before filing suit); *Hirsch*, 2021 WL 115856,2 at *8 (awarding

$5,000 for DMCA violation where Plaintiff failed to offer evidence of licensing fee history, willfulness of violation, cease-and-desist letters, or efforts to seek injunction).[11]

*Fourth*, requiring [Defendant] to pay maximum statutory damages would deter both [Defendant] and other companies from engaging in similarly egregious conduct in the future." *Sheldon*, 2016 WL 5107072, at *17. The requested reward addresses specific harms to Plaintiff, such as "depriv[ing] Plaintiff of the ability to control the timing and nature of the Photograph's publication and negotiate a licensing fee." *Olusola*, 2021 WL 631031, at *5.

For all of the foregoing reasons, the Court recommends that Plaintiff should be awarded $25,000 in statutory damages for Defendant's DMCA violation.

### C. Attorneys' Fees

Plaintiff seeks $2,700 in attorneys' fees based on nine hours of work completed by attorney David C. Deal at an hourly rate of $300. (Supp. Mem. Ex. 3, ECF No. 25-3.) The DMCA allows for an award of "reasonable attorney's fee to the prevailing party." 17 U.S.C. § 1203(b)(5). Courts typically look to the reasonableness of the hourly rate multiplied by the number of hours reasonably expended on the litigation. *Myeress*, 2018 WL 5961424, at *4

---

[11] Plaintiff purportedly offers similar cases in which courts awarded "well in excess of the minimum statutory damages for a defaulting defendant's violation of 17 U.S.C. § 1202(b)." (Pl.'s Mem., ECF No. 23-1 at 10–12 (citing judgments). The Court is not persuaded. First, Plaintiff concedes that the statutory award in each of those cases is $10,000, which is less than what Plaintiff requests here. (*Id.* at 10.). Further, Plaintiff does not attach the judgments or explain how those cases are comparable to the facts and issues here. *See Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC)(PK), 2020 WL 1233943, at *5 n.4 (E.D.N.Y. Mar. 13, 2020) (rejecting similar evidence as "unpersuasive") (citing *Seelie v. The Original Media Grp. LLC*, No. 19-CV-5643 (BMC), 2020 WL 136659, at *3, *5 (E.D.N.Y. Jan. 13, 2020)). Notwithstanding the foregoing, as set forth above, a review of the applicable factors supports Plaintiff's request.

(quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008)).  The applicant bears the burden to demonstrate reasonableness.  *Id.*

Under the circumstances of this case, the requested hourly rate of $300 is reasonable. When seeking attorneys' fees, "'the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Cuffaro*, 2020 WL 5077449, at *5 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)).  Attorney Deal offers no information in the motion papers about his qualifications or experience.  However, the Court takes judicial notice that the certificate of good standing attached to his motion for pro hac vice admission reflects that he has been admitted to practice since 2013.  (ECF No. 8-1.)  Attorney Deal is therefore at least the equivalent of a senior associate or junior partner; indeed, he is the named partner in his solo law practice.  (*See* David Decl., ECF No. 23-3 at 2.)  Additionally, "[a] review of cases in [the Southern and] the Eastern District[s] of New York suggests that courts have approved associate rates of $350, and up to $500 for partners in copyright cases."  *Myeress*, 2018 WL 5961424, at *5; *see also Olusola*, 2021 WL 631031, at *7 ("Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.").  Attorney Deal's requested hourly rate is less than approved billing rates in this district, and therefore is reasonable.

The Court also finds that the number of hours expended on this litigation, as reflected in the attorney billing records, is reasonable.  Approximately one-third of counsel's time (2.8 hours) was spent on pre-suit communications with Defendant or then-defense counsel regarding proposed resolution.  (Supp. Mem. Ex. 3, ECF No. 25-3 at 2; Supp. Mem. Ex. 2,

22

ECF No. 25-2 at 7–44.)  Because "it generally is prudent for a lawyer to attempt to resolve a dispute prior to filing suit to determine whether a resolution with minimal fees and costs can be achieved for the client[,"] this is an appropriate expenditure of time.  *Cuffaro*, 2020 WL 5077449, at *6.  The remaining 6.2 hours for post-complaint communications with then-defense counsel and for motion practice "is a reasonable amount of time spent bringing this case thus far." *Bass*, 2020 WL 2765093, at *6 (approving attorneys' fee award based on seven hours billed); *cf. Myeress*, 2018 WL 5961424, at *5 (in copyright action on motion for default judgment, denying attorneys' fees based on 18.2 hours billed as "excessive" and awarding fees based on nine hours billed).[12]

Based on the foregoing, the Court respectfully recommends an award of $2,700 in attorneys' fees.

**D.  Costs**

Finally, Plaintiff seeks $552 in costs for filing the complaint and his motion for pro hac vice admission to this court. (Supp. Mem. Ex. 3, ECF No. 25-3 at 2.)  "The Court . . . in its discretion may allow the recovery of costs" in a DMCA action.  17 U.S.C. § 1203(b)(4).  Plaintiff offers no receipts for the requested costs, but the paid fees are indicated on the docket. (ECF Nos. 1, 8.)  The Court permissibly takes judicial notice of the docket notations for paid

---

[12] Counsel does not include hours billed for the first, deficient motion for default judgment or the supplemental materials for the instant motion, suggesting that he seeks an award of attorneys' fees based on less than the amount of time actually billed.

filing fees. *Hirsch*, 2021 WL 1158562, at *10. The Court therefore respectfully recommends an award of $552 in costs.

## VII.   <u>CONCLUSION</u>

In summary, the Court finds that Plaintiff sufficiently alleges Defendant's infringement under Section 504 of the Copyright Act and intentional removal of copyright management information under Section 1202 of the DMCA. Accordingly, the Court respectfully recommends **granting** Plaintiff's motion for default judgment as follows: (1) a default judgment should be entered against Defendant and (2) Plaintiff should be awarded damages in the total sum of $38,252, which includes: (a) $10,000 in actual damages pursuant to the Copyright Act; (b) $25,000 in statutory damages under the DMCA; (c) $2,700 in attorneys' fees; and (d) $552 in costs.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant at the following addresses: TraxNYC Corp., 64-33 98th Street Apt. 6E, Rego Park, New York 11374 and TraxNYC Corp., 64 West 47th Street F-1, New York, New York 10036.

Within 14 days of service, any party may serve and file objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to

object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
February 14, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge